**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES FOR THE USE AND BENEFIT OF INTEGRATED PROTECTION SERVICES, INC., | Case No. 1:09-cv-41 |
| Plaintiff, | Spiegel, J. |
| | Bowman, M.J. |
| v. | |
| TK ELECTRICAL SERVICES, LLC, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

On March 20, 2009, Defendants Comprehensive Facility Services, Inc. and Ohio Farmers Insurance Co. filed a motion seeking to dismiss Plaintiff's complaint under Rules 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to the order of the presiding district judge (Doc. 2), Defendants' motion has been referred to the undersigned for initial consideration and a Report and Recommendation. *See also* 28 U.S.C. §636(b). I now recommend that Defendants' motion be granted.

**I. Background**

Plaintiff Integrated Protection Services, Inc. ("IPS") filed its complaint on January 20, 2009 against three Defendants: TK Electrical Services, LLC ("TK Electrical"), Comprehensive Facility Services, Inc. ("CFS"), and Ohio Farmers Insurance Co. ("OFI"), asserting the existence of federal jurisdiction under the Miller Act, 40 U.S.C. §3131 et seq., and 28 U.S.C. §1352. Plaintiff alleges that CFS contracted with non-party Actus Lend

Lease, LLC ("Actus") to act as the general contractor for a project "known as Building 1383, Ft. Knox Welcome Center, Knox Hill." (Complaint, Doc. 1 at ¶8). Plaintiff alleges that the project "is one for public work as defined by the Miller Act." (*Id.*).

Although not entirely clear from Plaintiff's complaint, it appears from Defendants' memoranda that non-party Actus holds a long-term contract with the Secretary of the Army, presumably under the Military Housing Privatization Initiative ("MHPI"),[1] through which Actus builds, owns, and manages housing for military personnel. Pursuant to this contract, the existence of which is not disputed by Plaintiff, Actus leases the land on which the Knox Hill housing development is located. The "Welcome Center" that is the subject of this litigation is part of that development. In its complaint, Plaintiff refers to Actus as "the Owner" named in the Payment Bond secured by CFS. (Doc 1 at ¶8).

Plaintiff alleges that Defendant TK Electrical was retained by CFS to perform electrical work on the development's Welcome Center, and that in turn, TK Electrical subcontracted with Plaintiff to provide "certain fire alarm and mass notification equipment" and related services. (Id. at ¶ 10, *see also* Doc. 1-1). Plaintiff alleges that although it performed the work, Defendant TK Electrical failed to fully compensate Plaintiff, even after Defendant TK Electrical was fully paid by CFS. Plaintiff alleges breach of contract against Defendant TK Electrical, and unjust enrichment against both CFS and TK Electrical. As a third count, Plaintiff seeks payment under the Miller Act pursuant to the payment bond issued to CFS by surety OFI. (*See* Doc. 1-2).

---

[1] Some courts and commentators have noted that the MHPI differs from traditional military construction projects, in that the ownership of the privatized housing units vests in the private developers rather than the government, with the United States merely retaining a reversionary interest at the expiration of the lease term. *See Bessinger v. United States*. 448 F. Supp. 2d 684 n. 2 (D.S.C. 2006)(discussing commentary).

Attached to Plaintiff's complaint as exhibits are both the alleged contract between TK Electrical and Plaintiff, and a copy of the "Payment Bond" issued by surety OFI, concerning a "construction contract" in the amount of $1,185,118.92 for the renovation of the Welcome Center by Defendant CFS. Plaintiff's complaint alleges that Defendants owe slightly more than $50,000.00 under the contract between Plaintiff and TK Electrical.

## II. Analysis

### A. Standard of Review

Defendants' motion seeks dismissal based on Rule 12(b)(1) (lack of jurisdiction) and Rule 12(b)(6)(failure to state a claim), as well as under Rule 12(b)(3)(improper venue). As the Sixth Circuit has recognized:

> "Generations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases..." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996). In theory, the difference is clear: "the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1350 (3d ed. 2004). Yet in practice, "the difference between the two motions is often difficult to discern." *Id.*

*Hamdi ex rel. Hamdi v. Napolitano,* 620 F.3d 615, 619 n. 3 (6th Cir. 2010).

Mindful of these fine distinctions, the court reviews Defendants' challenge to the court's subject matter jurisdiction under Rule 12(b)(1) as a "factual" challenge rather than a "facial" challenge. In addition to the allegations in the complaint, Defendants' motion is partially predicated upon the Exhibits attached to the complaint: the Payment Bond and the alleged contract between Plaintiff and TK Electrical. *See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009)(factual challenge includes

3

review of parties' exhibits).

Whether Plaintiff's claims ultimately would succeed is irrelevant for purposes of reviewing subject matter jurisdiction, as long as the claim presented is not frivolous. *See Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248-49 (6th Cir. 1996)("the plaintiff can survive the [Rule 12(b)(1)] motion by showing any arguable basis in law for the claim made"). The critical determination for subject matter jurisdiction in this case is whether Plaintiff's claims fall, as Plaintiff alleges, under the Miller Act.

The same determination is equally critical for purposes of reviewing Defendants' related argument under Rule 12(b)(6). Assuming the Miller Act to be inapplicable, Defendants argue that Plaintiff fails to state any other claim against them. Plaintiff argues that Defendants' Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Doc. 11 at 3 (citation omitted). However, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007) the Supreme Court held that the "famous" no-set-of-facts formulation "has earned its retirement," and instituted a new standard that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* at 1974.

In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court explained that a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations. *Id.* The first step is to identify the elements of the plaintiff's claim, in order to determine which allegations are mere legal conclusions, as

4

opposed to factual allegations entitled to the "assumption of truth." *Id.* at 1951 ("We begin...by identifying the allegations in the complaint that are not entitled to the assumption of truth"). On the facts presented, the central allegation in Plaintiff's complaint that is "not entitled to the assumption of truth" is that the construction project in issue "is one for public work as defined by the Miller Act."

### B. Subject Matter Jurisdiction Under the Miller Act

Plaintiff's complaint makes clear that the sole basis asserted to invoke federal jurisdiction is the Miller Act, and 28 U.S.C. §1352. Once subject matter jurisdiction is challenged, Plaintiff bears the burden of proving that jurisdiction exists. *Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 1990).

The Miller Act applies to the "construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. §3131(b). Although subcontractors and materialmen ordinarily may sue under state law and file a mechanic's lien on the subject property if they are not paid, a lien may not generally be filed against a federally owned building. The Miller Act was enacted in order to provide a remedy for materialmen or laborers under such circumstances. *United States ex rel. Blumenthal-Kahn Elec. Ltd. Partnership v. American Home Assur. Co.*, 219 F. Supp.2d 710, 713 (E.D. Va. 2002). "[I]n passing the Miller Act, Congress sought to place subcontractors and materialmen working on federal buildings and projects on essentially the same footing in terms of security for payment as subcontractors and materialmen working on private buildings or projects; for both groups, the security for payment is a payment bond that general contractors are required to furnish as a condition of the award of a construction contract." *Id.* at 714.

By its clear language, the Miller Act is limited in application to construction or alteration of a "public building or public work of the [United States]." Defendants persuasively argue that the Miller Act does not apply based upon the facts alleged by Plaintiff in this case. First, Plaintiff fails to allege that the United States was a party to the construction contract between Actus and the prime contractor, Defendant CFS. In addition, reviewing the complaint and attached exhibits, it is clear that neither the contract between Plaintiff and TK Electric nor the Payment Bond in any way references the United States or federal law. (Doc. 1-2).

Under similar circumstances, courts have declined to extend the jurisdictional reach of the Miller Act. "[I]n order for the Miller Act to apply, the United States must be a party to the contract for construction of the project." *United States ex rel. Gen. Elec. Supply Co. v. United States Fidelity & Gaur. Co.*, 11 F.3d 577, 580 (6th Cir. 1993). In *Gen. Elec. Supply Co.*, the Sixth Circuit held that the Miller Act did not apply when the United States provided funds, but was not a party to the contract for the construction of the wastewater treatment facility in question, and did not own the property or sign the contract for the improvements. The court defined the "garden variety" Miller Act case as "one in which the United States both owns the land and contracts for its improvement." *Id.* at 580. While recognizing that courts have occasionally extended Miller Act coverage beyond land ownership, the appellate court also noted that many courts have held "that, at a minimum, the United States must be 'a contracting party and that a bond was required in its favor.'" *Id.* at 581 n.3 (citation omitted).

In cases where the United States is not a party to the relevant contract, courts have

nearly uniformly held that the Miller Act will not apply.  *See e.g., Blumenthal-Kahn Elec. Ltd. Partnership v. American Home Assur. Co.*, 219 F. Supp.2d 710 (contracting authority for airport tunnel project was a political subdivision independent of federal government; Miller Act did not apply even though federal government retained ownership of land); *United States ex rel. Mississippi Road Supply Co. v. H.R. Morgan, Inc.,* 542 F.2d 262 (5th Cir. 1976)(no jurisdiction under Miller Act for federally-funded industrial park built on land owned by government and leased to private organization).  Notably, this principle has been applied to other cases involving military housing projects like the one at issue here. *See United States ex rel. Gen. Elec. Distrib. Corp. v. Centerline Gardens, Inc.,* 253 F.2d 133, 134-35 (6th Cir. 1958)(where United States leased land to private party for development of military housing project, parties to subsequent construction contract could not file suit under Miller Act).

The second key element of the Miller Act is that a bond be issued in favor of the United States.  Where the bond in question is issued in favor of a party different than the United States or one of its agencies, the Miller Act will not apply.  *See United States ex rel. Miller v. Mattingly Bridge Co.*, 344 F. Supp. 459, 461 (W.D. Ky. 1972)(dismissing where bond for highway construction project was issued in favor of Commonwealth of Kentucky rather than United States).  In this case, the Plaintiff does not allege that the Payment Bond was issued in favor of the United States.  In fact, examination of the Bond confirms that it was issued by the surety exclusively in favor of non-party Actus, and not the United States. (Doc. 1-2).  On similar facts, the application of the Miller Act has been rejected. *See United States ex rel. Roc Carter Co., LLC v Freedom Demolition, Inc.*, 2009 WL

7

3418196 (M.D. Ga Oct. 14, 2009)(for Miller Act to apply to case involving military housing project, United States must be a party to a construction contract, and bond must run in favor of United States).

The few older cases cited by Plaintiff to support application of the Miller Act are clearly distinguishable. For example, in *United States ex rel. Noland Co. v. Irwin*, 316 U.S. 23, 28, 62 S. Ct. 899 (1942), the Supreme Court borrowed from the definition of "public work" in the National Industrial Recovery Act to conclude that a public library built on a private university grounds was within the scope of the Miller Act. Aside from the limitation to cases involving the National Industrial Recovery Act, *see Gen Elect. Supply Co.,* 11 F.3d at 580, the United States was actually a party to the contract in *Irwin*.

Likewise, Plaintiff's reliance upon *Sullivan v. Faras-RLS Group, Ltd.*, 795 F. Supp. 305 (D. Ariz. 1992) is unavailing. In *Sullivan* a district court concluded that the Miller Act applied to the construction of a U.S. Post Office built entirely with federal funds, despite the fact that neither the government nor its agent was a direct contracting party, and the bond was not executed in the name of the United States. An Arizona case, *Sullivan* is neither controlling nor persuasive. The Sixth Circuit expressly declined to follow it in *General Elec. Supply*, 11 F.3d at 581 n.2, and its analysis has been criticized by other courts. *See, e.g., United States ex rel. Vealey v. Suffolk Constr. Co.*, 1996 WL 391875 (S.D.N.Y. July 12, 1996)(holding that center built for use by West Point alumni on land leased from federal government was not "public work" under Miller Act).

**C. Purpose of the Act/Policy**

Plaintiff advocates for extension of the Miller Act to the facts presented based on

the "purpose" of the Act - to provide some avenue of relief for subcontractors and materialmen when they seek payment for work performed on federal lands or buildings. *But see Mississippi Road Supply Co.,* 542 F.2d at 266 (noting purpose, but declining to "stretch the Miller Act's jurisdictional grant to dimly-lit limits" for development of industrial park, where United States retained only residual interest at expiration of long-term lease held by private company). Plaintiff notes that its former counsel initially asserted a lien under state law against the leasehold interest of Defendant CFS. Counsel for CFS, of the same law firm that currently represents that Defendant, wrote IPS to inform Plaintiff that any relief would lie under the Miller Act, and asking counsel to "release the unlawful lien immediately" or face "a slander of title action." Doc. 11-3. Based on that correspondence, Plaintiff IPS released its state court lien and filed this federal suit under the Miller Act.

Whether defense counsel's representation was an accurate one is not entirely clear, *see Mississippi Road Supply Co.,* 542 F.2d at 266 ("there appears to be no reason why a lien could not be asserted under state law against the leasehold interest" of a private corporation, notwithstanding the fact that the property was developed on federal land); *U.S. ex rel Roc Carter Co., LLC v. Freedom Demolition, Inc.*, 2009 WL 3418196 (same). However, even if a lien could not be asserted, this court has no authority to extend the Miller Act beyond its statutory language in the name of "policy," no matter how laudable the goal of affording subcontractors an additional avenue of relief may be.[2]

---

[2] In any future proceeding in state court, Plaintiff may attempt to use defense counsel's representation as a basis for some type of estoppel argument. However, Defendant's pre-litigation position concerning the legitimacy of a state court lien cannot be used to create subject matter jurisdiction that otherwise does not exist. Defendant has never argued before this court that Plaintiff's claims fall within the scope of the Miller Act.

9

### D. Other Basis for Federal Jurisdiction

The only basis stated in the complaint for federal jurisdiction other than the Miller Act is 28 U.S.C. §1352. However, that statute applies solely to bonds "executed under any law of the United States." Because the bond in question does not fall within the scope of the Miller Act, no jurisdiction exists under 28 U.S.C. §1352.

### E. Venue - Rule 12(b)(3)

In addition to challenging the lack of subject matter jurisdiction, Defendants assert that venue is improper because none of the work performed by Plaintiff took place in Ohio. Defendants note that even under the Miller Act, venue is proper only in the district in which the contract was to be performed.[3] In response, Plaintiff notes that Exhibit A to the Complaint, the alleged contract between TK Electrical and Plaintiff, shows that IPS agreed to deliver materials to TK Electrical in Cincinnati, Ohio. Based on this fact as well as the fact that the contract was "accepted and sent from...Cincinnati, Ohio," Plaintiff claims that venue is proper in this district.

The court declines to address Defendants' arguments challenging venue in light of the court's conclusion that it lacks subject matter jurisdiction over the federal claims presented.

### F. State Court Claims

To the extent that Plaintiff's breach of contract and unjust enrichment claims arise under state law, the court declines to exercise supplemental federal jurisdiction over the

---

[3] The Payment Bond itself includes a provision that "[n]o suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located...." Doc. 1-2 ¶ 11 at 3.

claims.

### G.  Rule 12(b)(6)

Defendant CFS additionally argues that CFS is entitled to dismissal of the unjust enrichment under Rule 12(b)(6) because Plaintiff has failed to allege the existence of a contract between Plaintiff and CFS, and Plaintiff admits that CFS paid TK Electrical for "all work that IPS performed." Doc. 1 at ¶ 15.  Similarly, Defendant OFI argues that Plaintiff can make no claim under the Payment Bond because it lacks any contractual relationship with OFI.  Because the court has concluded that no federal subject matter jurisdiction exists and that it should not exercise supplemental jurisdiction to the extent any claims arise under state law, it is unnecessary to reach these additional arguments.

### H.  Request for Oral Argument

In its response in opposition to Defendants' motion, Plaintiff requests oral argument. The court finds oral argument to be unnecessary for disposition; therefore,  Plaintiff's request is denied.

### III.  Conclusion and Recommendation

For the reasons stated herein, IT IS RECOMMENDED THAT Defendants' motion to dismiss (Doc. 6) be GRANTED and that this case be dismissed and stricken from the active docket.

            s/ Stephanie K. Bowman
            Stephanie K. Bowman
            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

UNITED STATES FOR THE USE
AND BENEFIT OF INTEGRATED
PROTECTION SERVICES, INC.,            Case No. 1:09-cv-41

       Plaintiff,                                      Spiegel, J.
                                                       Bowman, M.J.

   v.

TK ELECTRICAL SERVICES, LLC, et al.,

       Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).